UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Index No.
ORONDE BELL,

                                 Plaintiff,

              -against-                              **COMPLAINT**

BNP PARIBAS USA, INC., FUTURES GROUP
HOLDINGS INC., FUTURES GROUP IT LLC, EXTENSIS
II, INC., and DEOGENE MEZA, *Individually*,

                                Defendants.
------------------------------------------------------------------------X

Plaintiff ORONDE BELL, by and through his attorneys, Nisar Law Group, P.C., hereby complains of Defendants upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure and refusal to pay Plaintiff earned wages and/or failure to pay minimum wage owed for work performed.** As a result of Defendants' violations of the FLSA and NYLL, Plaintiff is entitled to: (a) the full amount of non-payment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

2. Plaintiff also complains pursuant to the Wage Theft Prevention Act, New York Labor Law § 195 *et seq.* and seeks to redress the damages he has suffered as a result of Defendants' **failure to give him written notice of wage rates**, including, inter alia, his regular rate of pay, how he was to be paid: by the hour, shift, day, commission, etc., his

1

regular payday, and/or the official name of the employer and other names used for business.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under § 216(b) of the FLSA (29 U.S.C. § 216 (b)), and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

6. At all times relevant, Plaintiff ORONDE BELL ("Plaintiff") was and is a resident of the State of New York and Nassau County.

7. At all times relevant, Defendant BNP PARIBAS USA, INC. ("BNP PARIBAS") was and is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of Delaware.

8. At all times relevant, Defendant BNP PARIBAS was and is a foreign business corporation which lawfully conducts business in the State of New York, including in New York City.

9. At all times relevant, Defendant FUTURES GROUP HOLDINGS INC. ("FUTURES GROUP HOLDINGS") was and is a domestic business corporation that lawfully conducts business in the State of New York and owns, operates, and/or maintains an office located at 53 West 36th Street, Suite 901, New York, NY 10018.

10. At all times relevant, Defendant FUTURES GROUP IT LLC ("FUTURES GROUP IT")

was and is an unincorporated domestic limited liability company that lawfully conducts business in the State of New York and owns, operates, and/or maintains an office located at 53 West 36th Street, Suite 901, New York, NY 10018.  Further, upon information and belief, FUTURES GROUP IT was and is a wholly-owned subsidiary of Defendant FUTURES GROUP HOLDINGS.

11. At all times relevant, Defendant DEOGENE MEZA ("MEZA") was and is an individual who was the owner of both Defendants FUTURES GROUP HOLDINGS and FUTURES GROUP IT.  Further, he held the title of Chief Executive Officer of both entities.

12. At all times relevant, Defendant EXTENSIS II, INC. ("EXTENSIS") was and is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New Jersey, and owns, operates, and/or maintains an office located at 900 Route 9 North, Woodbridge, NJ 07095.

13. At all times relevant, Defendant EXTENSIS was and is a foreign business corporation which lawfully conducts business in the State of New York.  Further, upon information and belief, EXTENSIS wholly owns an unincorporated subsidiary which goes by the name Extensis Group, LLC.

14. Defendants FUTURES GROUP HOLDINGS and FUTURES GROUP IT shall be herein referred to together as "the FUTURES GROUP Defendants."  Defendants BNP PARIBAS, FUTURES GROUP HOLDINGS, FUTURES GROUP IT, EXTENSIS, and MEZA shall be herein referred to collectively as "all Defendants."

15. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee, and an employee is anyone who is suffered or permitted to work.  As a result, Defendants are liable, jointly and severably,

as "employers" under the FLSA.

16. Upon information and belief, Defendants BNP PARIBAS, FUTURES GROUP HOLDINGS, and EXTENSIS (individually and together) grossed more than $500,000.00 in the past fiscal year.

## MATERIAL FACTS

17. In or around September 2016, Plaintiff became employed by the FUTURES GROUP Defendants as a project manager/ project coordinator. Specifically, he was hired as an employee to work on a data migration project, essentially to move data from one file system to another for a client of the FUTURES GROUP Defendants—namely, for Defendant BNP PARIBAS. As part of his employment, Plaintiff worked at the office of Defendant BNP PARIBAS located at either 1271 Avenue of the Americas, New York, NY 10020, or 51 West 52nd Street, New York, NY 10019 (depending on the week), as well as performed work for it.

18. During Plaintiff's employment with the FUTURES GROUP Defendants, Plaintiff's supervisor was Defendant MEZA. Defendant MEZA exerted significant ownership interests, exercisde day-to-day control of operations, and was involved in the supervision and payment of employees throughout the entirety of Plaintiff's employment.

19. As part of the terms of Plaintiff's employment with the FUTURES GROUP Defendants, they were to pay Plaintiff a rate of $475.00 per day for all work performed. Further, the FUTURES GROUP Defendants stated that they shall maintain the right to supervise, manage and control Plaintiff's work and work location and that he would report directly to the FUTURES GROUP Defendants. Plaintiff also submitted his weekly timecards (which listed his total days worked) to the FUTURES GROUP Defendants each and

every week.

20. Furthermore, upon becoming employed by the FUTURES GROUP Defendants, Plaintiff filled out an IRS Form W-2 at the direction of the FUTURES GROUP Defendants, he was paid wages by Defendant FUTURES GROUP IT, and payroll deductions were taken out of every paycheck by Defendant FUTURES GROUP IT.

21. Nevertheless, and in any event, the individuals who actually reviewed Plaintiff's work and gave him feedback and direction regarding his work product were employed by Defendant BNP PARIBAS.

22. Plaintiff regularly worked an average of five days per week beginning in or around September 2016 for Defendant BNP PARIBAS. Further, Plaintiff was fully paid pursuant to the terms of his employment from the commencement of his employment through the week of January 8-14, 2018. However, as of the week of January 15, 2018, Plaintiff stopped being paid altogether (as will be discussed in greater detail below).

23. Further, on or about May 31, 2017, Plaintiff received a letter from Defendant EXTENSIS which stated the following, insofar as is relevant:

Extensis is a Professional Employer Organization or PEO and partners with worksite employers to provide human resources, payroll, benefits, and worker's compensation coverage. **By the nature of our relationship, current or past employees of Futures Group LLC are/were co-employed by Extensis Group, LLC.** (emphasis added).

24. Around this time (i.e., shortly after May 31, 2017), Plaintiff began to be paid by Defendant EXTENSIS for all work performed. In other words, Defendant EXTENSIS was the payor for his wages, as well as Plaintiff's co-employer per the explicit representation made via letter on May 31, 2017.

25. As mentioned above, Plaintiff received compensation for work performed from September 2016 through the week of January 8-14, 2018. However, beginning the week

of January 15-21, 2018, all Defendants failed to pay Plaintiff despite Plaintiff performing work for all Defendants (and reporting to BNP Paribas offices and performing work for it). Specifically, Plaintiff reported for work, and actually performed work, during the following weeks: January 15-21, 2018 (four days of work performed); January 22-28, 2018 (five days of work performed); January 29-February 4, 2018 (five days of work performed); February 5-11, 2018 (three days of work performed); and, February 12-18, 2018 (two days of work performed) (a total of 19 days of work performed).

26. Plaintiff ceased working for all Defendants at the conclusion of the week of February 12-18, 2018. Significantly, during the period of January 15, 2018 through February 18, 2018 ("the period of non-payment"), Plaintiff worked a total of 19 days for which he never received any compensation. <u>As such, Plaintiff is owed $9,025.00 by all Defendants in unpaid wages ($475.00 per day x 19 days of work performed = $9,025.00).</u>

27. The last day Plaintiff actually performed work for all Defendants was February 13, 2018. He ceased working for all Defendants at the conclusion of that week. Nevertheless, for each week during the period of non-payment, Plaintiff submitted his "weekly timecard," which listed the dates he worked for approval and thereafter payment of wages. However, he was never paid for these 19 days of work performed.

28. Nevertheless, in the event Plaintiff is not entitled to be paid the $9,025.00 which he owed for 19 days of work performed at his $475.00/day rate, Plaintiff is nevertheless owed minimum wage for the period of non-payment.

29. During the 19 days that Plaintiff worked during the period of non-payment, he routinely arrived to work and began working around 9:00 AM, and finished work around 5:30 PM (with a one-hour lunch break).

30. The relevant minimum wage in effect for employees (such as Plaintiff) who worked in New York City during 2018 (the only year in which Plaintiff was not paid for work performed) for a company that employs 11 or more individuals was $13.00 per hour. As such, Plaintiff is owed $13.00 for each hour worked in the event he is not entitled to his rate at $475.00/day.

31. <u>Accordingly, Plaintiff is owed $1,852.50 ($13.00/hr. x 7.5 hrs. worked/ day x 19 days) in earned minimum wage for work performed during the period of non-payment.</u>

32. Lastly, following the enactment of the Wage Theft Prevention Act, an employer is required to provide an employee with written notice regarding: his regular rate of pay, overtime rate of pay, how he was to be paid: by the hour, shift, day, week, commission, etc., his "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, as well as any deductions to the employee's salary which will be made by the employer.

33. None of the defendants provided Plaintiff with any written notice to Plaintiff regarding, inter alia, his regular rate of pay or deductions to be made, throughout the entirety of his employment. Because of this, Plaintiff is entitled to recover $50.00 for each work day that the violations occurred (capped at $5,000.00). *See* NYLL § 198. <u>Accordingly, because Plaintiff worked for Defendants for more than 100 days during his employment, he is entitled to the statutory maximum of $5,000.00.</u>

34. **Based on the foregoing, Plaintiff is owed $14,025.00 ($9,025.00 + $5,000.00) along with attorneys' fees and costs, prejudgment interest, and an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages**

**found to be due.**

35. All Defendants' failure to pay Plaintiff his proper earned wages required by law was willful. Also, Defendants' failure to give Plaintiff proper notice pursuant to the Wage Theft Prevention Act was willful.

36. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands liquidated damages against all Defendants, jointly and severally. *See* FLSA 29 U.S.C. § 216(b); NYLL § 198.

37. Plaintiff also seeks payment of attorneys' fees and costs. *See* FLSA 29 U.S.C. § 216(b); NYLL § 198(4).

### AS A FIRST CAUSE OF ACTION
### VIOLATION OF THE NEW YORK LABOR LAW
### FAILURE TO PAY EARNED WAGES

38. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

39. Plaintiff's earned commissions constitute "wages" within the meaning of NYLL § 190(1).

40. All Defendants, in failing to pay Plaintiff for work performed, have violated the NYLL, including, inter alia, Article 6 and Section 191.

41. As a consequence, under NYLL § 198, Plaintiff is entitled to: (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

### AS A SECOND CAUSE OF ACTION
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### MINIMUM WAGE

42. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

43. All Defendants willfully employed Plaintiff in the aforementioned enterprise and failed to compensate Plaintiff at the required minimum hourly rate during certain periods of his employment.

44. All Defendants' failure to pay Plaintiff the mandated minimum hourly pay in accordance with the Act was a direct violation of the Act, specifically 29 U.S.C. § 206.

45. All Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

46. All Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

### AS A THIRD CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW § 652(1)
### MINIMUM WAGE

47. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

48. Plaintiff was an employee of all Defendants within the meaning of New York Labor Law.

49. All Defendants failed to pay Plaintiff the required minimum hourly wage rate for one hour of work during certain periods of his employment.

50. All Defendants violated Plaintiff's right to minimum wage pay under § 652(1); New York Labor Law, Article 19.

51. All Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No. 142.

52. On account of such violations, all Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

53. All Defendants' actions were willful.

54. All Defendants' failure to comply with the New York State Labor Law and New York's Minimum Wage Order caused Plaintiff to suffer loss of wages.

## AS A FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE WAGE THEFT PREVENTION ACT

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

56. All Defendants failed to give Plaintiff written notice regarding: his regular rate of pay, overtime rate of pay, how he was to be paid, his "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, or, deductions taken from wages, in violation of NYLL § 195.

57. As this occurred for more than 100 days of Plaintiff's employment with all Defendants, he is entitled to the maximum amount available under the law.

**WHEREFORE**, Plaintiff respectfully requests a judgment against all Defendants:

A. Declaring that all Defendants engaged in unlawful employment practices prohibited by the FLSA and NYLL by failing to pay Plaintiff earned wages, failing to pay him minimum wage, and by failing to give him proper notice pursuant to the Wage Theft Prevention Act;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from all Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices, including interest;

C. Awarding Plaintiff liquidated damages as a result of all Defendants' willful violations of law;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      May 16, 2019

                                      **NISAR LAW GROUP, P.C.**

By: _____
Casimir Wolnowski
*Attorneys for Plaintiff*
570 Lexington Ave., 16th fl.
New York, NY 10022
Ph: (646) 449-7210
Fax: (877) 720-0514
Email: cwolnowski@nisarlaw.com